# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC,<br><br>               Plaintiff,<br>v.<br><br>JOHN DOE, subscriber assigned IP address 71.234.109.137,<br><br>               Defendant. | Civil Action No.<br>3: 18 - CV - 2120(CSH)<br><br><br><br>FEBRUARY 26, 2019 |

**RULING ON PLAINTIFF'S MOTION FOR LEAVE TO SERVE A THIRD PARTY SUBPOENA PRIOR TO RULE 26(f) CONFERENCE [Doc. 7]**

**HAIGHT, Senior District Judge:**

## I. INTRODUCTION

Plaintiff, Strike 3 Holdings, LLC ("Strike 3") brings this copyright infringement action as the owner of original adult motion pictures that are featured on its subscription-based websites. *See* Doc. 7-2 (Declaration of Greg Lansky), ¶ 3.[1] Through its hired investigator, IPP International U.G. ("IPP"), Strike 3 has learned that Defendant Doe's Internet Protocol ("IP") address (71.234.109.137) was used to illegally distribute several of Strike 3's motion pictures.[2] Doc. 7-1, at 5, Doc. 7-3 (Fieser

---

[1] Greg Lansky is a member of General Media Systems, LLC ("GMS"), the parent company that owns Strike 3. Doc. 7-2, ¶ 1. He testified in his sworn declaration that "Strike 3 owns the intellectual property to the *Blacked*, *Blacked Raw*, *Tushy*, and *Vixen* adult brands, including the copyrights to each of the motion pictures distributed through *Blacked*, *Blacked Raw*, *Tushy* and *Vixen* and the trademarks to each of the brand names and logos." *Id.*, ¶ 3.

[2] Strike 3's independent forensic expert, Stephen Pasquale, reviewed the evidence captured by IPP and confirmed that Defendant Doe's IP address was used to engage in an infringing transaction with respect to to a Strike 3 movie on the exact date and time reported by IPP. Doc. 7-1, at 5. *See also* Doc. 7-3 ("Declaration of Tobias Fieser," IPP employee in litigation support

Decl.), ¶ 7; Doc. 7-4 (Pasquale Decl.), ¶¶ 7-9. *See also* Doc. 1, Ex. A. (List of 25 "Total Works Infringed" by IP Address: 71.234.109.137).[3]

IPP employs forensic software to identity IP addresses that infringers use to distribute Strike 3's copyrighted movies within the BitTorrent File Distribution Network.[4] Doc. 7-3 (Fieser Decl.), ¶¶ 7, 11. According to Plaintiff, IPP's investigations have revealed that Defendant used the BitTorrent protocol to illegally distribute multiple pieces of Strike 3's copyrighted movies listed in Exhibit A to Plaintiff's Complaint. *Id.*, ¶ 7. Each piece of the various movies was recorded in a "packet capture" ("PCAP"), a "forensically sound interface for recording network traffic," which records the time in logs kept by United States Internet Service Providers ("ISPs"), which track the IP Address of internet customers at a given time. *Id.*, ¶ 8. IPP's software confirmed that the BitTorrent pieces distributed by Doe's IP Address were reassembled into "a fully playable digital movie." *Id.*, ¶ 9. According to IPP's investigation, the alleged infringement at issue was "consistent and on-going." *Id.*, ¶ 8. IPP also confirmed through its ancillary worldwide BitTorrent surveillance program that Doe's IP Address is associated with "significant long term BitTorrent use." *Id.,* ¶ 12.

---

department), ¶¶ 3, 12; Doc. 7-4 (Declaration of Philip Pasquale, technology advisor with 7 River Systems, LLC, a Maryland-based cybersecurity firm specializing in "network security, data breaches, and the protection of secured information transmitted across networks"), ¶¶ 6-9.

[3] The Court cites the pages of the pleadings on the case docket according to the pagination of the Doc. No. (the number appearing in the upper right hand corner of each page of a filed document).

[4] According to Plaintiff, BitTorrent is "a system designed to quickly distribute large files over the Internet." Doc. 1, ¶ 17. "Instead of downloading a file, such as a movie, from a single source, BitTorrent users are able to connect to the computers of other BitTorrent users in order to simultaneously download and upload pieces of the file from and to other users." *Id.* Then, "[o]nce a user downloads all of the pieces of that movie from the other BitTorrent users, the movie is automatically reassembled into its original form, ready for playing." *Id.,* ¶ 18.

2

Strike 3 asserts that the only means it has to identify this persistent infringer is through his assigned IP address. Strike 3 has thus filed the pending motion for leave to serve a third party subpoena on Comcast Cable Communications, LLC ("Comcast Cable"), Defendant's ISP, pursuant to Rules 26(d)(1) and 45, Fed. R. Civ. P. *See* Doc. 7, at 1, Doc. 7-1, at 6. By obtaining the name and address of the Defendant, Plaintiff will be able to properly identify and serve him, and thereby prosecute Plaintiff's copyright infringement claim.[5]

## II. DISCUSSION

In general, parties "may not initiate discovery prior to satisfying the meet and confer requirement of Fed. R. Civ. P. 26(f)." *Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 241 (S.D.N.Y. 2012). Specifically, under Rule 26(d)(1), Fed. R. Civ. P., "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)," except in limited proceedings delineated in Rule 26(a)(1)(B), or "when authorized by these rules, by stipulation, or by court order." "[C]ourts may in some instances order earlier discovery." *Digital Sin*, 279 F.R.D. at 241 (citing Fed. R. Civ. P. 26(d)). *See, e.g.*, *Strike 3 Holdings, LLC v. Doe*, No. 3: 17-CV-1680 (CSH), 2017 WL 5001474, at *2 (D. Conn. Nov. 1, 2017) ("[A] party may engage in discovery before such a [26(f)] conference pursuant to a court order.") (quoting *Malibu Media,*

---

[5] The Court notes that Plaintiff has asserted that both personal jurisdiction over Defendant and venue are proper within the District of Connecticut because "Plaintiff used IP address geolocation technology by Maxmind, Inc. ('Maxmind'), an industry leading provider of IP address intelligence and online fraud detection tools, to determine that Defendant's IP address traced to a physical address in this District." Doc. 1, ¶¶ 8-10. According to Plaintiff, more than five thousand companies, "along with United States federal and state law enforcement, use Maxmind's GeoIP data to locate Internet visitors, perform analytics, enforce digital rights, and efficiently route Internet traffic." *Id.*, ¶ 9. In addition, the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338 (jurisdiction over copyright actions). *Id.*, ¶ 7.

3

*LLC v. John Doe Subscriber Assigned IP Address 173.68.5.86*, No. 1:16-CV-02462 (AJN), 2016 WL 2894919, at *2 (S.D.N.Y. May 16, 2016)) (citing Fed. R. Civ. P. 26(d)(1)).

When considering whether to grant a motion for expedited discovery prior to a Rule 26(f) conference, courts apply a "flexible standard of reasonableness and good cause." *Malibu Media*, LLC, 2016 WL 2894919, at *2 (gathering cases). *See also Arista Records LLC v. Does 1-4*, 589 F. Supp. 2d 151, 152-53 (D. Conn. 2008) (applying "good cause" standard to request for expedited discovery) (citation omitted). *See generally* 8A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2046.1 (3d ed. 2011) ("Although [Rule 26(d)] does not say so, it is implicit that some showing of good cause should be made to justify such an order, and courts presented with requests for immediate discovery have frequently treated the question whether to authorize early discovery as governed by a good cause standard.").

In the Second Circuit, in evaluating subpoenas seeking identifying information from ISPs regarding subscribers who are parties to copyright infringement litigation, courts have examined the following factors:

> (1) [the] concrete[ness of the plaintiff's] showing of a prima facie claim of actionable harm, . . . (2) [the] specificity of the discovery request, . . . (3) the absence of alternative means to obtain the subpoenaed information, . . . (4) [the] need for the subpoenaed information to advance the claim, . . . and (5) the [objecting] party's expectation of privacy.

*Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010) (quoting *Sony Music Entm't, Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 564-65 (S.D.N.Y. 2004)). If "[a]pplication of these 'principal factors' confirms that the Plaintiff is entitled" to the requested subpoena, the motion for early discovery will be granted for "good cause." *Malibu Media, LLC*, 2016 WL 2894919, at *2.

Examining the principal factors in detail, the plaintiff must first state a prima facie claim for

copyright infringement. *See, e.g., Sony Music Entm't Inc.*, 326 F. Supp. 2d at 565. Specifically, the plaintiff must show: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). *See also Urbont v. Sony Music Entm't*, 831 F.3d 80, 88 (2d Cir. 2016) (same).

Strike 3 has alleged that it is the owner of the multiple works at issue, "which have either been registered with the United States Copyright Office or have pending copyright registrations." Doc. 1 ("Complaint"), ¶ 31. The registration numbers and copyright application numbers for all works appear on Exhibit A to the Complaint, which lists the 25 "Total Works Infringed." Doc. 1-1, at 1-2. *See also* 17 U.S.C. § 410(c) ("In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate.").

Under § 411(a) of the Copyright Act, "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a). With respect to this provision, Plaintiff is advised that filing an application alone may or may not be sufficient to show ownership of a valid copyright for purposes of litigating a civil copyright infringement action.

As the Second Circuit noted:

> [T]he Federal Courts of Appeals are divided over whether a pending application satisfies § 411(a)'s requirement of copyright registration as a precondition to instituting an infringement action. *Compare Apple Barrel Prods., Inc. v. Beard*, 730 F.2d 384, 386–87 (5th Cir.1984) (Copyright Office's receipt of application suffices), *with M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1488–89 (11th Cir. 1990) (approving district court's decision to allow suit to proceed only after plaintiff received Copyright Office's response to registration application and amended the complaint), *Gaiman v. McFarlane*, 360 F.3d 644, 655 (7th Cir.2004) ("[A]n application to register must be filed, and either granted or refused, before suit can be

brought"), *and La Resolana Architects, PA v. Clay Realtors Angel Fire*, 416 F.3d 1195, 1202-05 (10th Cir.2005) (comparing the Fifth Circuit's "application approach" with the Eleventh Circuit's "registration approach" and adopting the latter) *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 130 S.Ct. 1237, 176 L.Ed.2d 18 (2010)."

*Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 125 (2d Cir. 2014). In *Psihoyos*, the Second Circuit found it "need not resolve the dispute [among the circuits] or otherwise embroil [itself] in this circuit split because, even assuming *arguendo* that a pending application constitutes a 'registration' under § 411(a), Psihoyos had not even filed the applications for registration of the relevant works prior to instituting the action claiming infringement of the copyright in these works, as required by the plain terms of the statute." *Id.* (citing 17 U.S.C. § 411(a)). *See also A Star Grp., Inc. v. Manitoba Hydro*, 621 F. App'x 681, 683 (2d Cir. 2015) ("Our Court has not yet determined . . . whether a merely pending application for registration satisfies the Act's requirement that a work be registered before a related infringement suit is filed.") (citing 17 U.S.C. § 411(a)). The question thus remains undecided.[6]

---

[6] With respect to those copyrights for which there is only a pending application, the majority of courts in the Southern District of New York have firmly held that pending applications are not sufficient for pleading a copyright infringement action. *See, e.g., Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 600 (S.D.N.Y. 2018) ("There is an overwhelming consensus in the Southern District of New York that under the registration approach, a pending application for copyright registration cannot sustain a claim for infringement prior to its approval or rejection by the Copyright Office.") (collecting cases) (citation and internal quotation marks omitted).

In contrast, in this District, at least one Judge has noted an inclination to follow the "application approach" under which a litigant is allowed to proceed with an infringement suit as soon as all necessary steps to register the copyright have been completed. *Oban US, LLC v. Nautilus, Inc.,* No. 3:13CV1076 (JBA), 2014 WL 2854539, at *7 (D. Conn. June 23, 2014) ("[T]he Court concludes that Plaintiff has not stated a plausible copyright infringement claim, and it need not determine whether to adopt the registration or application approach, but would be inclined to adopt the application approach, which courts and scholars have recognized as being more efficient and better serving the interest of justice."). Moreover, other courts within this Circuit have voiced approval of the "application approach." *See, e.g., Chevrestt v. Am. Media, Inc.*, 204 F. Supp. 3d

Because, however, Strike 3's complaint includes a number of works for which the Copyright Office has approved registration, the Court will continue to consider its motion for leave to serve a third party subpoena. In so doing, the Court expresses no opinion as to whether Strike 3 has also presented a valid copyright infringement claim with respect to the works for which it has filed an application for registration but has received no resolution by the Copyright Office.

The Court next examines whether Strike 3 has made a plausible showing that wrongful distribution of multiple pieces of its registered works has occurred. Upon review of the pleadings, the Court concludes that it has done so. Plaintiff has alleged that investigation by IPP has revealed that Defendant copied and distributed the constituent elements of Plaintiff's works using the BitTorrent protocol. Doc. 1, ¶ 36. Defendant allegedly showed the works' images and/or made the accompanying sounds audible, transmitting the works "by means of a device or process, to members of the public capable of receiving [their] display."[7] *Id.*, ¶ 38(c). In so doing, Defendant's alleged infringements were committed willfully, withing the meaning of 17 U.S.C. § 504(c)(2), denoting statutory damages for willful violations. *Id.*, ¶ 39.

The owner of a copyright has exclusive rights to reproduce that copyrighted work and to

---

629, 631 (S.D.N.Y. 2016) ("It is hard to see what public, private, or statutory interest is served or harmed by requiring [plaintiff] to wait, and re-file his action after his application is approved or denied, when he has already done everything he can to obtain that result."); *Diamond Collection, LLC v. Underwraps Costume Corp.*, No. 17-CV-0061(JS)(SIL), 2019 WL 347503, at *3 (E.D.N.Y. Jan. 22, 2019) ("[G]iven that the claimant who has submitted an application that has yet to be acted upon at that juncture has done all that she can do, and will ultimately be allowed to proceed [on other claims] regardless of how the Copyright Office treats her application, it makes little sense to create a period of "legal limbo" in which suit is barred.") (citation omitted).

[7] *See also* Doc. 7-3 (Fieser Decl.), ¶ 7 (asserting that each piece of Strike 3's movies (listed on Ex. A. of its Complaint) was recorded in a PCAP that correlated with Defendant's IP Address, showing "infringement [to be] consistent and on-going").

distribute copies to the public by sale, transfer of ownership, rent, lease, or lending. 17 U.S.C. §§ 106(1)-(2). Moreover, a plaintiff is entitled to seek statutory damages and attorney's fees under the United States Copyright Act if its copyrighted work was registered within three months of the first date of publication. 17 U.S.C. §§ 411 (c)(2), 501.

A plaintiff makes "a concrete, prima facie case of copyright infringement by alleging ownership of the registered copyright and alleging unlawful downloading, copying, and distribution of this work by specifying the type of technology used, the IP address from which the file was accessed and shared, and the date and time of the infringement." *Malibu Media, LLC v. Doe*, No. 14-CV-4808 (JS)(SIL), 2016 WL 4574677, at *6 (E.D.N.Y. Sept. 1, 2016) (quoting *Malibu Media, LLC v. John Does 1-11*, No. 12-CV-3810 (ER), 2013 WL 3732839, at *6 (S.D.N.Y. July 16, 2013)). *See also Sony Music Entm't Inc.*, 326 F. Supp. 2d at 565-66 ("[T]he use of P2P [peer-to-peer] systems to download and distribute copyrighted music has been held to constitute copyright infringement.") (collecting cases); *Patrick Collins, Inc. v. John Doe 1*, 945 F. Supp. 2d 367, 375 (E.D.N.Y. 2013) ("Indeed, every court to have addressed this issue has found a sufficiently alleged copyright infringement claim based on BitTorrent technology, even when the defendant was merely identified with an IP address."). Under these circumstances, Plaintiff has stated a prima facie case for actionable harm due to copyright infringement of at least certain works that have been registered by the Copyright Office.

Second, in order to show "good cause" for early discovery, the plaintiff must narrowly tailor and specify the information sought by the discovery request. The information requested in the subpoena must be limited, seeking "concrete and narrow information: the name and address of the subscriber associated with Doe [Defendant's] IP address . . . . " *John Wiley & Sons, Inc. v. Doe Nos.*

*1-30,* 284 F.R.D. 185, 190 (S.D.N.Y. 2012). Courts have labeled the subscriber's identity and address as "highly specific," *Malibu Media*, 2016 WL 4574677, at *6, recognizing that "Plaintiffs clearly need identification of the putative John Does in order to serve process on them and prosecute their claims," *UN4 Prods., Inc. v. Doe-173.68.177.95*, No. 17-CV-3278 (PKC) (SMG), 2017 WL 2589328, at *3 (E.D.N.Y. June 14, 2017) (citation and internal quotation marks omitted). *See also Sony Music Entm't Inc.*, 326 F. Supp. 2d at 566 ("Ascertaining the identities and residences of the Doe defendants is critical to plaintiffs' ability to pursue litigation, for without this information, plaintiffs will be unable to serve process."); *Malibu Media, LLC*, 2013 WL 3732839, at *5 n.1 ("Discovery requests must be 'sufficiently specific' to establish a reasonable likelihood that the discovery request would lead to identifying information that would make possible service upon particular defendants who could be sued in federal court.'") (quoting *Sony Music Entm't Inc.*, 326 F. Supp. 2d at 566); *Arista Records LLC*, 589 F. Supp. 2d at 153 (granting "expedited discovery limited to the 'name, address, telephone number, e-mail address, and Media Access Control addresses for each defendant'") (quoting *London–Sire v. Doe*, 542 F. Supp. 2d 153, 178 (D. Mass. 2008)).

In the case at bar, the subpoena requested seeks "the true name and address of the Defendant to whom the ISP assigned an IP address as set forth in the Complaint." Doc. 7-6, ¶ 2. Because the subpoena is sufficiently specific, the second principal factor weighs in favor of the Court granting Plaintiff's motion for leave to serve the subpoena.

Third, there must be no "alternative means to obtain the subpoenaed information.*" Arista Records*, 604 F.3d at 119 (quoting *Sony Music Entm't Inc.*, 326 F. Supp. 2d at 564-65). In the case at bar, the only information Plaintiff has regarding Defendant Doe is his IP address. Doc. 7-1, at 12.

According to Philip Pasquale, technology advisor with 7 River Systems, LLC, who was hired to analyze and retain forensic evidence captured by IPP, "[b]ased on [his] experience in similar cases, Defendant's ISP Comcast Cable is the only entity that can correlate the IP address to its subscriber and identify Defendant as the person assigned the IP address 71.234.109.137 during the time of the alleged infringement." Doc. 7-4 (Pasquale Decl.), ¶ 10. The ISPs who are responsible for assigning IP addresses "know who an address is assigned to and how to get in contact with them." Doc. 7-1, at 12 (citing, *inter alia*, Beginner's Guide to Internet Protocol (IP) Addresses, https://www.icann.org/en/system/files/files/ip-addresses-beginners-guide-04mar11-en.pdf). Otherwise, the owner of an IP address is anonymous.

As Plaintiff asserts, "ISPs' records are the only available evidence that allows us to investigate who committed crimes [or misdeeds] on the Internet." Doc. 1, at 12 (quoting Statement of Jason Weinstein, Deputy Assistant Attorney General, Criminal Division, Before Committee On Judiciary Subcommittee On Crime, Terrorism, And Homeland Security, U.S. House of Representatives, January 25, 2011, at p. 2).[8] Such addresses "may be the only way to learn . . . that a certain Internet address was used by a particular human being to engage in or facilitate a criminal offense." *Id.*, at 11 (quoting Weinstein Statement, at p. 2). Because there is no public registry to provide the names of subscribers and their corresponding IP addresses, there is "no alternate means by which Plaintiff can identify [the Defendant] absent the present subpoena." *Id.,* at 13. *See also Next Phase Distribution, Inc. v. John Does 1-27*, 284 F.R.D. 165, 171-72 (S.D.N.Y. 2012) (Because the plaintiff "cannot identify [Defendant Doe] without a court-ordered subpoena, . . . there is good

---

[8] *See* https://www.justice.gov/sites/default/files/criminal-ceos/legacy/2012/03/19/Justice%20Data%20Retention%20Testimony.pdf .

cause to allow for early discovery."). In sum, Plaintiff has established that it lacks alternative means to obtain the subpoenaed information, namely, Defendant's identity and address.

Fourth, the plaintiff must show that the subpoenaed information is necessary to advance the claim at issue. As stated *supra*, here, Strike 3 cannot learn the subscriber's identity without the subpoenaed information, so cannot serve process on Defendant. *See, e.g., Sony Music Entm't Inc.*, 326 F. Supp. 2d at 566. *See also Arista Records LLC*, 589 F. Supp. 2d at 153 ("Because learning the true identities of the pseudonymous individuals alleged to have violated Plaintiffs' copyrights is essential to their prosecution of this litigation, Plaintiffs have demonstrated their need for expedited discovery."). As one district court concluded in this Circuit, "[w]ithout learning the Defendant's identity and address, the Plaintiff will be unable to serve process and pursue its claim." *Malibu Media, LLC v. Doe*, No. 15-CV-3504 (JFB) (SIL), 2016 WL 4444799, at *11 (E.D.N.Y. Aug. 23, 2016) (citation omitted).

Finally, with respect to the fifth prong, the Court weighs the Plaintiff's interest in obtaining the information against that of Defendant's right to privacy. The question that arises is whether Defendant has an expectation of privacy in his IP address as he infringes copyrighted material.

The Second Circuit has acknowledged that "[t]he Supreme Court has long held that a 'person has no legitimate expectation of privacy in information he voluntarily turns over to third parties,' including phone numbers dialed in making a telephone call and captured by a pen register." *United States v. Ulbricht*, 858 F.3d 71, 96 (2d Cir. 2017) (quoting *Smith v. Maryland*, 442 U.S. 735 (1979)). "The recording of IP address information and similar routing data, which reveal the existence of connections between communications devices without disclosing the content of the communications, are precisely analogous to the capture of telephone numbers at issue in *Smith*." *Ulbricht*, 858 F.3d

at 97. The Second Circuit then "join[ed] the other circuits . . . [to] hold that collecting IP address information devoid of content is 'constitutionally indistinguishable from the use of a pen register.'" *Id.* (quoting *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008), *cert. denied*, 555 U.S. 908 (2008)). Specifically, there is no expectation of privacy in "subscriber information provided to an internet provider," such as an IP address.[9] *Id.* (quoting *United States v. Christie*, 624 F.3d 558, 573 (3d Cir. 2010)). Such information has been "voluntarily conveyed to third parties." *Christie*, 624 F.3d at 573.

In cases where parties have argued that the First Amendment protected their anonymous speech in using their IP addresses, the Second Circuit has held that copyright infringers are not entitled to shield their identities from those who seek to enforce their claims under copyright law. For example, in *Sony Music Entm't Inc. v. Does 1-40,* the court held that "defendants have little

---

[9] In copyright infringement cases, defendants have argued unsuccessfully that the revelation of their subscriber information, *i.e.*, their IP address, violates their right to privacy under the First Amendment or the Fourth Amendment. For example, they have argued that the First Amendment protects anonymous speech, citing such cases as *Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182, 200 (1999). *See Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 562 (S.D.N.Y. 2004); U.S. Const. amend. I (protecting one's anonymous speech). In other cases, they have asserted that the Fourth Amendment protects their personal information in their IP address from unreasonable seizure. *See United States v. Ulbricht*, 858 F.3d 71, 96 (2d Cir. 2017); U.S. Const. amend. IV (protecting "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures"). These privacy arguments have failed. The First Amendment does not protect copyright infringement. *See, e.g., Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 555-56 (1985). "Parties may not use the First Amendment to encroach upon the intellectual property rights of others." *Sony Music Entm't Inc.*, 326 F. Supp. 2d at 563 (citing *In re Capital Cities/ABC, Inc.*, 918 F.2d 140, 143 (11th Cir.1990)). Moreover, the Fourth Amendment does not protect infringers who have voluntarily provided "their IP addresses to Internet service providers for the specific purpose of directing the routing of information." *Ulbricht*, 858 F.3d at 96 (citing *Christie*, 624 F.3d at 574).

expectation of privacy in downloading and distributing copyrighted songs without permission." 326 F. Supp. 2d at 566. Accordingly, the copyright plaintiffs were "entitled to discovery in light of the defendants' minimal expectation of privacy" in transmitting information on the internet in violation of applicable law. *See also, e.g., Arista Records, LLC*, 604 F.3d at 124 (holding defendant's "expectation of privacy for sharing copyrighted [works] through an online file-sharing network [was] simply insufficient to permit him to avoid having to defend against a claim of copyright infringement"); *Rotten Records, Inc. v. Doe*, 108 F. Supp. 3d 132, 134 (W.D.N.Y. 2015) ("Plaintiff's interest in learning Defendant's name and address outweighs Defendant's privacy interest.").

In sum, as in *Sony Music Entm't*, the Doe Defendant's First Amendment right to remain anonymous must give way to Plaintiff's right to use the judicial process to pursue its allegedly meritorious copyright infringement claim. Moreover, the Doe Defendant lacks the right under the Fourth Amendment to protect his IP address from revelation, where he has voluntarily shared such information with the Internet Service Provider. Plaintiff will be granted leave to take early discovery to determine the identity of Defendant Doe.

In granting early discovery by subpoena, the Court recognizes that in certain BitTorrent cases involving adult content, other courts have protected the defendant's privacy with an order establishing procedural safeguards. For example, some courts have allowed the defendant to proceed anonymously in the case. *See e.g. Malibu Media, LLC*, 2016 WL 4444799, at *2 ("[T]he Court issued a Protective Order governing the manner in which such information would be disclosed."). As set forth *infra*, in ruling on Plaintiff's motion, the Court will accept Plaintiff's request to establish procedures to protect the Doe Defendant's privacy here.

## III. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS the Plaintiff's "Motion for Leave to Serve a Third Party Subpoena Prior to a Rule 26(f) Conference" [Doc. 7] and ORDERS, as follows:

1. Under relevant Second Circuit authority, Plaintiff Strike 3 established that "good cause" exists for the Court to grant Plaintiff leave to serve a third party subpoena on Comcast Cable (hereinafter the "ISP") for the purpose of determining the identity of the alleged infringer, Defendant John Doe. *See, e.g., Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010); *Strike 3 Holdings, LLC v. Doe,* No. 3: 17-CV-1680 (CSH), 2017 WL 5001474, at *6 (D. Conn. Nov. 1, 2017); *Sony Music Entm't v. Does 1-40*, 326 F. Supp. 2d 556, 564-65 (S.D.N.Y. 2004); *Malibu Media, LLC v. John Does 1-11*, No. 12 Civ. 3810 (ER), 2013 WL 3732839, at *6 (S.D.N.Y. 2013); *John Wiley & Sons, Inc. v. Doe Nos. 1-30*, 284 F.R.D. 185, 189 (S.D.N.Y. 2012).

2. Plaintiff may immediately serve the ISP with a proper Rule 45 subpoena commanding the ISP to provide Plaintiff with the true name and address of the Defendant to whom the ISP assigned an IP address of 71.234.109.137, as set forth in the Complaint.[10] *See, e.g.*, Doc. 1, ¶¶ 5, 12. Plaintiff shall attach to any such subpoena copies of the Complaint and this Ruling.

3. Plaintiff may also serve a Rule 45 subpoena in the same manner as described in the preceding paragraph on any service provider who, in response to a subpoena, is identified as a

---

[10] Pursuant to Rule 45, Fed. R. Civ. P., a court-issued subpoena must state the court from which it is issued, the title and civil-action number of the relevant case, and "command each person to whom it is directed to do the following at a specified time and place: attend and testify; produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control; or permit the inspection of premises." Fed. R. Civ. P. 45(a)(1)(A)(i)-(ii). In addition, the subpoena must include the text of Rule 45(d)-(e), setting forth, *inter alia*, provisions protecting a person subject to such a subpoena and duties in responding thereto. *Id*. 45(a)(1)(A)(iii), (d)-(e).

provider of Internet services to the Defendant.

4. If the ISP or another service provider (as described in ¶ 3, *supra*) qualifies as a "cable operator," as defined by 47 U.S.C. § 522(5), it shall comply with 47 U.S.C. § 551(c)(2)(B) by sending a copy of this Order to the Defendant.[11]  Section 551(c)(2)(B) states in relevant part:

> A cable operator may disclose such [personally identifying] information if the disclosure is . . . made pursuant to a court order authorizing such disclosure, if the subscriber is notified of such order by the person to whom the order is directed.

5. The ISP shall have twenty-one (21) days from the date of service of the Rule 45 subpoena upon it to serve the Defendant Doe with copies of the subpoena, the Complaint in this action, and this Ruling. The ISP may serve Defendant Doe using any reasonable means, including written notice sent to his or her last known address, transmitted either by first class mail or via overnight service.

6. The Defendant shall then have thirty (30) days after receipt of service of the subpoena by the ISP to file any motions with this Court to contest the subpoena, as well as to request to litigate the subpoena anonymously.[12]  During this thirty-day period, if Defendant contests the subpoena, he/she shall so notify the ISP, which shall then not turn over any information to the Plaintiff. After

---

[11] 47 U.S.C. § 522(5) defines the term "cable operator" as "any person or group of persons (A) who provides cable service over a cable system and directly or through one or more affiliates owns a significant interest in such cable system, or (B) who otherwise controls or is responsible for, through any arrangement, the management and operation of such a cable system."

[12] In considering whether to make a motion to quash the subpoena, Defendant is reminded that the Court has already analyzed the requisite principal factors to determine that such a subpoena should be allowed under *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010). Also, in particular, with respect to privacy of one's identity, a "Doe['s] expectation of privacy for sharing copyrighted [works] through an online file-sharing network [is] simply insufficient to permit him to avoid having to defend against a claim of copyright infringement." *Arista Records, LLC,* 604 F.3d at 124. "[T]o the extent that anonymity is used to mask copyright infringement or to facilitate such infringement by other persons, it is unprotected by the First Amendment." *Id.* at 118. *See also* n. 9 (herein), *supra.*

resolution of any motion relating to the subpoena, the Court will instruct the ISP when it may, if ever, turn the requested discovery over to the Plaintiff.

7. Alternatively, if the thirty-day period referenced in the preceding paragraph elapses without Defendant contesting the subpoena, the ISP shall have fourteen (14) days thereafter to produce to Plaintiff the information which is responsive to the subpoena.

8. Plaintiff may only use the information disclosed by an ISP (the true name and address of the Defendant), in response to service of the Rule 45 subpoena, for the purpose of protecting and enforcing Plaintiff's rights under its copyright, as set forth in its Complaint. Plaintiff may not solicit settlement of this case prior to Plaintiff's service of the Complaint upon the Defendant.

9. Within 30 days after receipt of Defendant's name and address from an ISP, Plaintiff must serve Defendant with the summons and complaint in accordance with the Federal Rules of Civil Procedure.

10. At the outset, Defendant will be permitted to litigate this case anonymously unless and until this Court orders otherwise and only after Defendant has had an opportunity to challenge disclosure of his/her identity by motion. At this time, Plaintiff is ordered not to disclose Defendant's name or address, or any other identifying information other than Defendant's ISP number, that Plaintiff may learn. Plaintiff shall not threaten to disclose any of Defendant's identifying information. Plaintiff is ordered not to publicly file any of Defendant's identifying information and to file all documents containing Defendant's identifying information under seal.[13]

---

[13] The Court finds "good cause" to impose initial sealing of Defendant's personally identifying information due to the concern that defendants often feel compelled to settle copyright infringement actions regarding adult films to prevent disclosure of their identities and thus possible public censure. *See, e.g., Malibu Media, LLC v. John Does 1–5*, 285 F.R.D. 273, 278 (S.D.N.Y.2012) ("[T]here is a fear that regardless of a defendant's actual culpability, [the Defendant]

11. Within thirty (30) days after service of the Complaint and Summons upon the Doe Defendant, he or she may, if so advised, move this Court for leave to continue proceeding anonymously in this action. Otherwise, this sealing order, protecting his or her identity and address, may be terminated by the Court.

The foregoing is SO ORDERED.

Signed: New Haven, Connecticut
February 26, 2019

          /s/Charles S. Haight, Jr.
CHARLES S. HAIGHT, JR.
Senior United States District Judge

---

may feel compelled to settle the lawsuit confidentially in order to avoid the embarrassment of being named as a defendant in a case about the alleged illegal trading of a pornographic film.") (internal quotation marks omitted)); *Malibu Media, LLC v. Doe*, No. 15 CIV. 4381 (JFK), 2015 WL 4923114, at *1 (S.D.N.Y. Aug. 18, 2015) ("[C]ourts in this district have expressed concern . . . that disclosure of a defendant's name or other identifying information in cases involving infringement of adult films could lead to abusive litigation through coercion.").